MADDOX, Justice.
This Court granted certiorari in this case to determine whether the trial court imper-missibly refused to allow the recall of a defense witness who had previously, after conferring with court appointed counsel, asserted her privilege against self-incrimination.
Petitioner Williams was indicted for the murder of Elvin Murry; at trial, Williams’s mother, Lillian “Granny” Counts, a 77-year-old woman who could neither read nor write except to write her own name, took the stand and seemed to be about to confess to the murder when the trial judge informed her of her rights and appointed an attorney to represent her.[1] After talk *272 ing with her attorney, Counts decided to invoke her Fifth Amendment right against self-incrimination. After a noon recess, Williams’s attorney told the trial judge that two other people had informed him that Counts had changed her mind during the noon recess and wanted to confess on the stand; and that before lunch she had invoked the privilege because her attorney had told her that if she testified, she, too, could go to jail.[2] Counts was not recalled to tell the judge that she had indeed changed her mind and wanted to waive her Fifth Amendment right.[3]
Based on the record, it appears that defense counsel never actually recalled Counts to have her testify, under oath, that she desired to no longer assert her privilege against self-incrimination. Because Counts was not recalled by the defense, the trial judge had before him nothing but the unsubstantiated assertion by Williams’s attorney that two other individuals had told him that Counts had changed her mind.
Williams contends that it was error for the trial judge not to recall Counts and question her about her change of mind. Our reading of the record indicates that Williams’s counsel never asked the trial judge to recall Counts personally for that purpose, and when the judge ruled that he would not allow Counts to testify again before the jury, Williams did not object to that ruling. In fact, the record shows that Williams’s counsel wanted to make a showing that two witnesses would testify that Counts, during the noon recess, told them that she wanted to withdraw her right not to testify, and confess to the murder. The only objection in the record that we find concerns the trial court’s not allowing Williams’s counsel to call other persons who had heard Counts confess. Under this *273 set of facts, we cannot say that the trial judge abused his discretion.
Based on the foregoing, we quash the writ as being improvidently granted.
WRIT QUASHED AS IMPROVIDENTLY GRANTED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. The record shows that the Court's attention was quickened by the district attorney's intervention:
"MR. NIEZER: Based upon what has already been presented in Court in opening and what not, we feel that Mrs. Counts is going to set up *272 there and claim that she did it. She ought to be advised of her Fifth Amendment rights before she goes any further.
"THE COURT: I have to do that. Now, you will follow me. What if we got her in here and we are uncertain that she understands her rights?
“MR. NIEZER: I think she ought to be appointed an attorney.
"THE COURT: What if the attorney can’t have her understand what is going on?
“MR. NIEZER: The Court will have to make that decision, whether she is competent to understand her rights and competent to testify-
"THE COURT: Are you going to ask her questions like that, Mr. Lewis?
"MR. LEWIS: Definitely, Your Honor.”

. The record shows the following transpired after the noon recess:
"THE COURT: Out of the presence of the jury in a conference room. Let the record show, now, that we have got back from lunch at 12:30. Mr. Lewis wants to go to the record, now, concerning Mrs. Counts’ invoking her Fifth Amendment rights in the courtroom in the presence of the jury just before we broke for lunch.
"MR. LEWIS: The witness, Lillian Counts, and two other witnesses, namely Larrice Williams and Virginia Twilley, they approached me before taking — or after taking the break for dinner, informing me that Mrs. Counts explained to them that she misunderstood her rights, that she was instructed by her attorney that if she further testified that her daughter, Mable, would be sent away to prison for life or that she would be sent away to prison for life. That was her understanding. Mrs. Virginia Twilley, a witness who is here today, and Larrice Williams informed me that is what Lillian Counts explained to her, the way she understood it.
"THE COURT: Are you suggesting that we bring this lawyer back over here to refute this in the record, that she didn’t tell her any such thing?
"MR. LEWIS: Yes.”

. The record shows the following:
"THE COURT: Let the record show that Ms. Paschal has come into the witness room and we are in the presence of everybody on my request. We have got back from lunch and Mr. Lewis made known to the Court that Mrs. Counts had talked to several people during the break at lunch and when we got back, now she wants to change her mind and not invoke her Fifth Amendment rights. She wants to testify and Mr. Lewis informed me and some of the witnesses that maybe Mrs. Counts had talked to, told him that the reason Mrs. Counts invoked the Fifth Amendment was that her attorney, meaning you, informed her that if she didn’t invoke the Fifth Amendment rights not to testify, that she, Mrs. Counts, would go to the penitentiary and serve time and also her daughter, the defendant in this case, would go to the penitentiary for this crime and serve time.
"Now, this was in the record in your absence and now we ask that you be sworn and testify and let either Mr. Lewis or Mr. Niezer ask you questions relative to what you told Mrs. Counts. Is that all right with you? "MS. PASCHAL: Fine with me.”